Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/30/2018 08:12 AM CDT

Douglas L. Hemsley, Special Administrator of the
Estate of Paul H. Hemsley, deceased, appellant,
v. Thomas J. Langdon, M.D., et al., appellees.

___ N.W.2d ___

Filed March 30, 2018.    No. S-16-1123.

1. **Trial: Expert Witnesses: Appeal and Error.** An appellate court reviews
   the record de novo to determine whether a trial court has abdicated its
   gatekeeping function under *Schafersman v. Agland Coop*, 262 Neb. 215,
   631 N.W.2d 862 (2001).
2. \_\_\_\_: \_\_\_\_: \_\_\_\_. When the trial court has not abdicated its gatekeeping
   function under *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d
   862 (2001), an appellate court reviews the trial court's decision to admit
   or exclude the evidence for an abuse of discretion.
3. **Motions for New Trial: Appeal and Error.** An appellate court reviews
   a denial of a motion for new trial or, in the alternative, to alter or amend
   the judgment, for an abuse of discretion.
4. **Judges: Words and Phrases.** A judicial abuse of discretion exists when
   the reasons or rulings of a trial judge are clearly untenable, unfairly
   depriving a litigant of a substantial right and denying just results in mat-
   ters submitted for disposition.
5. **Expert Witnesses: Appeal and Error.** The standard for reviewing the
   admissibility of expert testimony is abuse of discretion.
6. **Judgments: Verdicts.** On a motion for judgment notwithstanding the
   verdict, the moving party is deemed to have admitted as true all the rel-
   evant evidence admitted that is favorable to the party against whom the
   motion is directed, and, further, the party against whom the motion is
   directed is entitled to the benefit of all proper inferences deducible from
   the relevant evidence.
7. \_\_\_\_: \_\_\_\_. To sustain a motion for judgment notwithstanding the
   verdict, the court resolves the controversy as a matter of law and may
   do so only when the facts are such that reasonable minds can draw but
   one conclusion.

8. **Trial: Pretrial Procedure: Evidence: Appeal and Error.** When a motion in limine to exclude evidence is overruled, the movant must object when the particular evidence which was sought to be excluded by the motion is offered during trial to preserve error for appeal.

9. **Malpractice: Expert Witnesses: Proof.** As a general matter, expert testimony is required to identify the applicable standard of care.

10. **Courts: Expert Witnesses.** Under the *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d 862 (2001), framework, the trial court acts as a gatekeeper to ensure the evidentiary relevance and reliability of an expert's opinion. This entails a preliminary assessment whether the reasoning or methodology underlying the testimony is valid and whether that reasoning or methodology properly can be applied to the facts in issue.

11. **Expert Witnesses.** The standards of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d 862 (2001), require proof of the scientific validity of principles and methodology utilized by an expert in arriving at an opinion in order to establish the evidentiary relevance and reliability of that opinion.

12. **Trial: Expert Witnesses: Intent.** The purpose of the gatekeeping function is to ensure that the courtroom door remains closed to "junk science" that might unduly influence the jury, while admitting reliable expert testimony that will assist the trier of fact.

13. **Trial: Expert Witnesses.** In evaluating the validity of scientific testimony, a trial court considers a number of factors. These include (1) whether the theory or technique can be, and has been, tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation; and (4) the "general acceptance" of the theory or technique.

14. **Trial: Rules of Evidence: Expert Witnesses.** In making the preliminary assessment of validity and applicability regarding the admissibility of expert opinion evidence, the trial judge has the discretion both to avoid unnecessary Neb. Rev. Stat. § 27-104 (Reissue 2016) hearings, where the reliability of an expert's methods is stipulated to or properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases, where cause for questioning the expert's reliability arises.

15. **Trial: Expert Witnesses: Records: Appeal and Error.** A trial court adequately demonstrates that it has performed its gatekeeping duty when the record shows (1) the court's conclusion whether the expert's opinion

is admissible and (2) the reasoning the court used to reach that conclusion, specifically noting the factors bearing on reliability that the court relied on in reaching its determination.

16. **Motions for New Trial: Appeal and Error.** A motion for new trial is to be granted only when error prejudicial to the rights of the unsuccessful party has occurred.

Appeal from the District Court for Douglas County: James T. Gleason, Judge. Affirmed.

Greg Garland, of Greg Garland Law, Kathy Pate Knickrehm, Tara DeCamp, of DeCamp Law, P.C., L.L.O., and Todd E. Frazier, of Frazier Law Offices, P.C., for appellant.

David A. Blagg, of Cassem, Tierney, Adams, Gotch & Douglas, and David D. Ernst, of Pansing, Hogan, Ernst & Bachman, L.L.P., for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Per Curiam.

## I. INTRODUCTION

The special administrator of the estate of Paul H. Hemsley, deceased (the Estate), brought a medical negligence action against Thomas J. Langdon, M.D.; John T. Batter, M.D.; and Omaha Thoracic and Cardiovascular Surgery, P.C. (collectively the doctors), claiming they were negligent in the rendering of medical care and treatment to Hemsley. Prior to trial, the court overruled the Estate's motion to exclude and motion in limine regarding the testimony of the doctors' expert witnesses. At a jury trial, the district court admitted, over the Estate's objections, testimony by several expert witnesses that Langdon and Batter met the standard of care. The jury found for the doctors. The Estate appeals. We affirm.

## II. BACKGROUND

On September 22, 2011, Langdon performed a coronary artery bypass on Hemsley, a 67-year-old male. During the

procedure, Langdon placed a chest tube into Hemsley's anterior mediastinum to monitor any postoperative internal bleeding and to drain blood and serum from under the breastbone. Langdon concluded the procedure, and Hemsley remained at the hospital to recover.

On September 25, 2011, a nurse notified Batter, the physician on duty, that fecal material was "oozing" from Hemsley's chest incision and that he was feverish. Hemsley was transferred to the intensive care unit with a temperature of 104.9 degrees. Batter called in another surgeon and "the heart team" to operate on Hemsley.

During the second operation, it became apparent that Hemsley had sustained a transverse colon injury. The physicians repaired the colon and irrigated the abdomen to remove the stool present. Batter saw stool in the abdomen, but "not a lot." Batter and the team "observed that there was no evidence that any stool had gotten up from where the hole [in the colon] was underneath the rib cage or into any tract that was there." As a result, Batter decided not to open Hemsley's mediastinum to irrigate that area for possible stool.

On September 30, 2011, Hemsley was transferred out of the intensive care unit. The next day, he became restless, confused, hypotensive, hypoxemic, and unresponsive and later died as a result of acute respiratory failure due to or as a consequence of peritonitis and of sepsis due to or as a consequence of coronary artery disease.

On September 19, 2013, the Estate filed a complaint against the doctors. In its complaint, the Estate asserted a medical malpractice claim under the Nebraska Hospital-Medical Liability Act, Neb. Rev. Stat. §§ 44-2801 to 44-2855 (Reissue 2010). The Estate argued that due to Langdon's and Batter's professional negligence, the Estate was entitled to predeath damages, wrongful death damages, and funeral expenses.

The Estate subsequently filed a motion in limine and a motion to exclude the testimony of the doctors' expert witnesses. At the pretrial hearing, the Estate argued that "the

Court has . . . no information before it on what method-
ologies [the doctors' expert witnesses] used nor how they
applied them nor how did they arrive at a logical conclusion."
The Estate further argued that the expert witnesses testified
"about education, training, and experience," but that under
federal and state case law (*Daubert*/*Schafersman*),[1] "[t]hey
still must disclose the methodologies and . . . the reasoning
that they used."

The district court filed an order reserving ruling on the
Estate's motion in limine and overruling the Estate's motion
to exclude testimony, stating that the expert opinions were not
of the kind that would be subject to a *Daubert*/*Schafersman*
test. The court eventually overruled the Estate's motion in
limine regarding the doctors' methodologies, which was essen-
tially a reassertion of the arguments presented in the motion
to exclude.

A jury trial was held. At trial, the Estate called as a witness
a cardiac surgeon who testified that he found a breach of the
standard of care by Langdon. The surgeon stated that "at a 99
percent certainty level, the injury was made by the clamp when
it was passed into the chest." He testified that the malpractice
by Langdon was "the inciting event that led to [Hemsley's]
death." At the conclusion of its case in chief, the Estate
renewed its pretrial *Schafersman* motions.

At trial, the defense offered the testimony of Langdon,
Batter, and another cardiothoracic surgeon on the standard of
care. The Estate objected and renewed its *Schafersman* motions
when each witness was questioned on the standard of care. The
court overruled the motions.

Langdon, the cardiothoracic surgeon who performed the
initial surgery, testified that he met the applicable standard of
care and did not pierce Hemsley's colon with the clamp during

---

[1] See *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.
Ct. 2786, 125 L. Ed. 2d 469 (1993), and *Schafersman v. Agland Coop*, 262
Neb. 215, 631 N.W.2d 862 (2001).

the surgery. Langdon contended there were three possibilities as to how Hemsley's transverse colon was injured: First, the "transverse colon wall was weakened" from a previous surgery and the "clamp skinned it or nicked it . . . or just the outside of it, enough to give it a weakness." Second, when Langdon opened Hemsley's chest, "there was enough force on that if the colon was scarred to the back of the abdominal wall . . . the serosa of the colon . . . may have partially torn . . . and weakened it." Third, "the tube was immediately adjacent to [the colon] and putting pressure on that part of the colon," which weakened the lining of the colon.

Batter, the cardiothoracic surgeon who performed the second surgery, to irrigate out the contamination, also testified that he met the standard of care. Finally, the other cardiothoracic surgeon testified as an expert witness that Langdon and Batter "very clearly met the standard of care in this case."

A jury found in favor of the doctors. The Estate's posttrial motions for new trial, for judgment notwithstanding the verdict, to strike the opinions of defense's expert witnesses, and to alter or amend the judgment were overruled. The Estate appeals.

## III. ASSIGNMENTS OF ERROR

The Estate assigns that the district court erred in (1) failing to properly perform its gatekeeping function under *Daubert*/ *Schafersman* by overruling the Estate's motion in limine and motion to exclude the expert testimony regarding medical opinions and methodologies used and applied by the doctors' experts and (2) overruling the Estate's posttrial motions, which were based on the improper admission of the doctors' expert testimony that had been subject to the Estate's motion in limine, motion to exclude, and objection at trial based on the *Daubert*/*Schafersman* requirements.

## IV. STANDARD OF REVIEW

[1,2] An appellate court reviews the record de novo to determine whether a trial court has abdicated its *Schafersman*

gatekeeping function.[2] When the trial court has not abdicated its *Schafersman* gatekeeping function, an appellate court reviews the trial court's decision to admit or exclude the evidence for an abuse of discretion.[3]

One issue on appeal asks whether standard of review expert testimony is subject to *Daubert*/*Schafersman*. We review that question de novo. If we conclude that it is, then we review the facts for an abuse of discretion.

[3,4] An appellate court reviews a denial of a motion for new trial or, in the alternative, to alter or amend the judgment, for an abuse of discretion.[4] A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[5]

[5] The standard for reviewing the admissibility of expert testimony is abuse of discretion.[6]

[6,7] On a motion for judgment notwithstanding the verdict, the moving party is deemed to have admitted as true all the relevant evidence admitted that is favorable to the party against whom the motion is directed, and, further, the party against whom the motion is directed is entitled to the benefit of all proper inferences deducible from the relevant evidence.[7] To sustain a motion for judgment notwithstanding the verdict, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion.[8]

---

[2] *Zimmerman v. Powell*, 268 Neb. 422, 684 N.W.2d 1 (2004); *Schafersman v. Agland Coop, supra* note 1.

[3] *Zimmerman v. Powell, supra* note 2.

[4] *InterCall, Inc. v. Egenera, Inc.*, 284 Neb. 801, 824 N.W.2d 12 (2012).

[5] *Balames v. Ginn*, 290 Neb. 682, 861 N.W.2d 684 (2015).

[6] *State v. Daly*, 278 Neb. 903, 775 N.W.2d 47 (2009).

[7] *Frank v. Lockwood*, 275 Neb. 735, 749 N.W.2d 443 (2008).

[8] *Id.*

## V. ANALYSIS

### 1. MOTION IN LIMINE

[8] We note that the Estate's first assignment of error is stated in terms of a motion in limine and motion to exclude evidence. When a motion in limine to exclude evidence is overruled, the movant must object when the particular evidence which was sought to be excluded by the motion is offered during trial to preserve error for appeal.[9] We find that the Estate's error was adequately preserved at trial.

### 2. DAUBERT/SCHAFERSMAN ANALYSIS AND STANDARD OF CARE

The Estate argues that the district court erred in concluding that the expert testimony regarding the standard of care did not require a *Daubert/Schafersman* analysis. The doctors argue that the trial court appropriately overruled the *Daubert/Schafersman* objections in regard to the challenged testimony.

#### (a) Standard of Care in Medical Malpractice Cases

To establish a prima facie case of medical malpractice, a plaintiff must show (1) the applicable standard of care, (2) that the defendant(s) deviated from that standard of care, and (3) that this deviation was the proximate cause of the plaintiff's harm.[10]

The applicable standard of care, in cases such as this arising under the Nebraska Hospital-Medical Liability Act,[11] has been established by the Legislature:

Malpractice or professional negligence shall mean that, in rendering professional services, a health care provider has failed to use the ordinary and reasonable care, skill,

---

[9] *State v. Huston*, 285 Neb. 11, 824 N.W.2d 724 (2013).

[10] *Thone v. Regional West Med. Ctr.*, 275 Neb. 238, 745 N.W.2d 898 (2008).

[11] §§ 44-2801 to 44-2855.

and knowledge ordinarily possessed and used under like circumstances by members of his profession engaged in a similar practice in his or in similar localities. *In determining what constitutes reasonable and ordinary care, skill, and diligence on the part of a health care provider in a particular community, the test shall be that which health care providers, in the same community or in similar communities engaged in the same or similar lines of work, would ordinarily exercise and devote to the benefit of their patients under like circumstances.*[12]

The standard under § 44-2810 includes a locality focus,[13] but otherwise is consistent with the general common-law rule that in a medical malpractice case, the standard of care is found in the customary practices prevailing among reasonable and prudent physicians.[14]

To establish the customary standard of care in a particular case, expert testimony by a qualified medical professional is normally required.[15] Often, such testimony is premised on the expert's personal knowledge of, and familiarity with, the customary practice among medical professionals in the same or similar locality under like circumstances.

### (b) *Daubert*/*Schafersman* Framework

[9] Neb. Rev. Stat. § 27-702 (Reissue 2016), governs the admissibility of expert testimony and provides that the witness must be qualified as an expert: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or

---

[12] § 44-2810 (emphasis supplied).

[13] See *Green v. Box Butte General Hosp.*, 284 Neb. 243, 818 N.W.2d 589 (2012).

[14] *Murray v. UNMC Physicians*, 282 Neb. 260, 806 N.W.2d 118 (2011).

[15] See, e.g., *Simon v. Drake*, 285 Neb. 784, 829 N.W.2d 686 (2013); *Thone v. Regional West Med. Ctr., supra* note 10.

education, may testify thereto in the form of an opinion or otherwise." As a general matter, expert testimony is required to identify the applicable standard of care.[16]

[10-12] In *Schafersman v. Agland Coop*,[17] we adopted the framework set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[18] and its progeny, *Kumho Tire Co. v. Carmichael*[19] and *General Electric Co. v. Joiner*.[20] Under the *Daubert*/*Schafersman* framework, the trial court acts as a gatekeeper to ensure the evidentiary relevance and reliability of an expert's opinion.[21] This entails a preliminary assessment whether the reasoning or methodology underlying the testimony is valid and whether that reasoning or methodology properly can be applied to the facts in issue.[22] The *Daubert*/*Schafersman* standards require proof of the scientific validity of principles and methodology utilized by an expert in arriving at an opinion in order to establish the evidentiary relevance and reliability of that opinion.[23] The purpose of this gatekeeping function is "'to ensure that the courtroom door remains closed to "junk science" that might unduly influence the jury, while admitting reliable expert testimony that will assist the trier of fact.'"[24]

[13] The Court in *Daubert* also set out a list of considerations that a trial court may use to evaluate the validity of

---

[16] *Thone v. Regional West Med. Ctr., supra* note 10. See *Simon v. Drake, supra* note 15.

[17] *Schafersman v. Agland Coop, supra* note 1.

[18] *Daubert v. Merrell Dow Pharmaceuticals, Inc., supra* note 1.

[19] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999).

[20] *General Electric Co. v. Joiner*, 522 U.S. 136, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997).

[21] *Id*.

[22] *Id.*

[23] *Schafersman v. Agland Coop, supra* note 1.

[24] *State v. Herrera*, 289 Neb. 575, 588, 856 N.W.2d 310, 324 (2014).

scientific testimony. These include (1) whether the theory or technique can be, and has been, tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation; and (4) the "'general acceptance'" of the theory or technique.[25]

[14,15] In making the preliminary assessment, the trial judge has the discretion both to avoid unnecessary Neb. Rev. Stat. § 27-104 (Reissue 2016) hearings, where the reliability of an expert's methods is stipulated to or properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases, where cause for questioning the expert's reliability arises.[26] A trial court adequately demonstrates that it has performed its gatekeeping duty when the record shows (1) the court's conclusion whether the expert's opinion is admissible and (2) the reasoning the court used to reach that conclusion, specifically noting the factors bearing on reliability that the court relied on in reaching its determination.[27]

In *Kumho Tire Co.*, the U.S. Supreme Court discussed how *Daubert*[28] applies to the testimony of experts who are not scientists and concluded that the trial judge's general gatekeeping obligation also applies to testimony based on technical and other specialized knowledge.[29] The Court further held that

> a trial court *may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability. But, as the Court stated in *Daubert*, the test of reliability is "flexible," and

---

[25] *Daubert v. Merrell Dow Pharmaceuticals, Inc., supra* note 1, 509 U.S. at 594. Accord *Schafersman v. Agland Coop, supra* note 1.

[26] *Schafersman v. Agland Coop, supra* note 1.

[27] *Id.*

[28] *Daubert v. Merrell Dow Pharmaceuticals, Inc., supra* note 1.

[29] *Kumho Tire Co. v. Carmichael, supra* note 19.

*Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case.[30] Furthermore, the Court stated that

[o]ur emphasis on the word "may" thus reflects *Daubert*'s description of the [Fed. R. Evid.] 702 inquiry as "a flexible one." . . . *Daubert* makes clear that the factors it mentions do *not* constitute a "definitive checklist or test." . . . And *Daubert* adds that the gatekeeping inquiry must be "'tied to the facts'" of a particular "case."[31]

The Court stated that "'[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony.'"[32] The Court further emphasized that the factors should not apply even in every instance in which the reliability of scientific testimony is challenged, but can help to evaluate the reliability even of experience-based testimony.[33]

In *Rankin v. Stetson*,[34] we applied the *Daubert/Schafersman* factors to expert testimony that the defendant failed to meet the standard of care in the treatment of the plaintiff's spinal cord injury when the plaintiff did not receive surgery within 72 hours of the injury. We held that it was not an abuse of discretion for the district court to reject the expert's testimony, reasoning that the district court acted as a gatekeeper to ensure that the reasoning or methodology underlying the expert testimony was valid and properly applied. We explained that because the expert witness failed to disclose the underlying facts or data for his opinions, he was not qualified to testify to his opinion under § 27-702.[35]

---

[30] *Id.*, 526 U.S. at 141.

[31] *Id.*, 526 U.S. at 150.

[32] *Id.*

[33] *Kumho Tire Co. v. Carmichael, supra* note 19.

[34] *Rankin v. Stetson*, 275 Neb. 775, 749 N.W.2d 460 (2008).

[35] *Id.*

In *Zimmerman v. Powell*,[36] we held that the district court abdicated its gatekeeping duty because it failed to explain its reasoning for overruling a *Daubert*/*Schafersman* motion. The plaintiff's expert witness testified, over the defendant's objection, to data that the expert had derived from a computer program. The district court overruled the objection, but did not explain why it had determined that the expert's testimony was admissible under *Daubert*/*Schafersman*. We stated that a trial court, when faced with such an objection, "'must adequately demonstrate by specific findings on the record that it has performed its duty as gatekeeper'" and in that case had failed to do so.[37] Nevertheless, we found that in that instance, the district court's failure to perform its gatekeeping duties did not result in prejudice to the defendant. We held that the court's failure to conduct its gatekeeping function did not taint the issue of the defendant's damages, and we modified the judgment accordingly.

It is clear that in *Stetson*, a medical malpractice case, we applied *Daubert*/*Schafersman* to standard of care testimony. Furthermore, as "'specialized knowledge,'" expert testimony pertaining to the standard of care is subject to the trial judge's general gatekeeping obligation.[38]

### (c) Court Applied *Daubert*/*Schafersman* to Doctors' Expert Testimony

At the pretrial motion hearing, the Estate made a motion to exclude the testimony of the doctors' expert witnesses on the basis that the expert witnesses failed to provide the methodologies used in reaching their expert opinions on the standard of care and failed to explain the application of such methodologies. The court noted on the record that the witnesses were "not testifying as to some novel form of science, medicine,

---

[36] *Zimmerman v. Powell, supra* note 2.

[37] *Id.* at 430, 684 N.W.2d at 9.

[38] See *Rankin v. Stetson, supra* note 34, 275 Neb. at 780, 749 N.W.2d at 465.

engineering, anything like that," but that the testimony regarding the standard of care was "straightforward" and was based on the witnesses' personal knowledge:

> [M]y view here is that this is not the type of opinion or science that is subject to a [*Daubert*/*Schafersman*] test. For that reason, your motion will be overruled.
>
> . . . .
>
> My view of [*Daubert*] is it applies to novel or science that is not settled. That is not — in other words, the standard of care is a settled method of science. How a standard of care is arrived at is a settled method. Every expert in the country would give you the same basis for determining what is the standard of care. Just what you said when you were making your argument.
>
> So that is how it's arrived at. All experts do it the same way.
>
> . . . .
>
> . . . I don't think it's an exception to [*Daubert*]. . . .
>
> . . . .
>
> What . . . I see before me based on the evidence you've provided for the purpose of this hearing is a straightforward medical opinion. And that is not, in my opinion, at this point subject to [*Daubert*].

Contrary to the Estate's characterization on appeal, the trial court did not find that expert testimony on the standard of care in medical malpractice cases is exempt from *Daubert*/*Schafersman* analysis. As is evident from the above excerpt from the pretrial motion hearing, the trial judge made several statements regarding whether *Daubert*/*Schafersman* applied. The Estate takes one of those statements out of the broader context of the judge's pretrial hearing statements and ultimate findings to argue that the judge misstated and misapplied our *Daubert*/*Schafersman* jurisprudence. After review, however, we interpret the judge's statements to be consistent with our previous case law and his judicial gatekeeping responsibilities.

The trial court appropriately focused on both the nature of the challenged testimony and the objections raised by the Estate. Here, the witnesses' testimony on the standard of care was not based on clinical practice guidelines, physician surveys, or any other scientific methodology or theory. Rather, it was empirical testimony based on their personal knowledge of the ordinary care, skill, and diligence commonly exercised by cardiac surgeons in Nebraska under similar circumstances and the actual care, skill, and diligence they exercise during operations.

Moreover, we understand the trial court's ruling to have been premised on the Estate's failure to sufficiently call into question the reliability or validity of the testimony being challenged. To raise a *Daubert*/*Schafersman* objection, the initial task falls on the party opposing expert testimony to sufficiently call into question the reliability or validity of some aspect of the anticipated testimony.[39] Only after the factual basis, data, principles, methods, or their application has been sufficiently called into question does the proponent of the expert testimony have the burden of showing that the testimony is reliable.[40]

We find no merit to the Estate's contention that the district court abandoned its gatekeeping function by failing to apply *Daubert*/*Schafersman*; nor do we find merit in the Estate's contention that the district court failed to assess the methodology underlying the testimony and whether the methodology could properly be applied to the facts at issue. The court adequately demonstrated "'by specific findings on the record'" that it performed its duty as gatekeeper.[41]

---

[39] *State v. Kuehn*, 273 Neb. 219, 728 N.W.2d 589 (2007).

[40] *State v. Mason*, 271 Neb. 16, 709 N.W.2d 638 (2006).

[41] *Zimmerman v. Powell, supra* note 2, 268 Neb. at 430, 684 N.W.2d at 9.

### (d) Doctors' Expert Testimony Met
#### *Daubert/Schafersman* Standard

Next, we turn to whether the *Daubert/Schafersman* standard was met. The Estate argues that the court failed to note factors bearing on reliability and that while education is relevant under *Daubert/Schafersman*, the reasoning and methodology used to form an opinion is also required. Neither party disputes the professional qualifications of the other party's expert witnesses.

The testimony offered by the expert witnesses was certainly relevant to the issue at trial. They testified to their education, training, and experience which formed the basis of their opinions as to the standard of care. Their opinions as to the standard of care were helpful to the jury only if the jury understood each expert's qualifications and experience. Langdon, a cardiothoracic surgeon, testified that he was trained extensively in general surgery and that he completed a board certification in general surgery and thoracic surgery. Langdon stated that he is licensed in Nebraska and Iowa and has performed "six or 7,000 open heart operations." Langdon also testified that he had been consulted by physicians who were seeking advice on the proper treatment of patients. In addition, Langdon's curriculum vitae was submitted into evidence. Langdon then testified, over objection, that he met the standard of care.

Similarly, Batter, a cardiothoracic surgeon, testified to his education, training, and experience. Batter testified that he is board certified and licensed in Nebraska. Batter explained that he has been "doing this since 1995" and that he "probably averaged 250 heart surgeries a year." Batter then testified, over objection, that he met the standard of care. The court stated that the Estate's objection was overruled "for the same reason it was previously overruled prior to trial."

We find no error in the district court's determination that the testimony provided by the witnesses would assist the jury in understanding and determining the facts at issue in

this case. As noted above, the *Daubert*/*Schafersman* inquiry is "'flexible.'"[42] The *Daubert*/*Schafersman* standard is not "'"some magical incantation."'"[43] Depending on the nature of the testimony offered, *Daubert* factors "'may or may not be pertinent in assessing reliability.'"[44] And "whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine."[45] We do not mean that trial courts must always determine the admissibility of standard of care testimony in a medical malpractice case by analyzing all of the *Daubert*/*Schafersman* factors. Instead, depending on the nature of the testimony offered and the objections thereto, *Daubert* factors "'may or may not be pertinent in assessing reliability.'"[46]

We reject the Estate's interpretation of *Zimmerman*,[47] that the district court similarly abdicated its gatekeeping duty in this case by failing to explain its reasoning and methodology. We side with those jurisdictions that have found that *Daubert* factors apply to expert testimony on the standard of care.[48] This should not be misconstrued as signaling some sort of change in our standard of care jurisprudence. We are aware some commentators have suggested that due to scientific and technological advancements in the practice of medicine, a standard of care based on local custom and ordinary practice is

---

[42] *Kumho Tire Co. v. Carmichael, supra* note 19, 526 U.S. at 150.

[43] *Zimmerman v. Powell, supra* note 2, 268 Neb. at 430, 684 N.W.2d at 9.

[44] *Kumho Tire Co. v. Carmichael, supra* note 19, 526 U.S. at 150.

[45] *Id.*, 526 U.S. at 153.

[46] *Id.* See *Daubert v. Merrell Dow Pharmaceuticals, Inc., supra* note 1.

[47] *Zimmerman v. Powell, supra* note 2.

[48] *Dickenson v. Cardiac & Thoracic Surgery TN*, 388 F.3d 976 (6th Cir. 2004); *Sullivan v. U.S. Department of Navy*, 365 F.3d 827 (9th Cir. 2004); *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396 (3d Cir. 2003); *Mitchell v. U.S.*, 141 F.3d 8 (1st Cir. 1998); *Seifert v. Balink*, 372 Wis. 2d 525, 888 N.W.2d 816 (2017).

outdated and should be replaced with a *Daubert*-style analysis of scientific evidence.[49] But in Nebraska, where the applicable standard of care testimony is statutory, such a policy debate is properly reserved for the Legislature, not the courts. For that reason, in applying the *Daubert*/*Schafersman* factors to standard of care testimony in a medical malpractice case, trial courts should be mindful not to supplant the customary care standard required by § 44-2810. As this court observed in *Murray v. UNMC Physicians*,[50] the standard of care in medical malpractice cases cannot be altered for public policy reasons: "We cannot depart from the customary standard of care on policy grounds, even if it is subject to criticism, because the standard of care is defined by statute and public policy is declared by the Legislature."

The record shows the trial court considered the applicability of the *Daubert*/*Schafersman* factors, but found they offered little assistance in determining the reliability of the witnesses' personal knowledge of the customary standard of care and their personal knowledge of the actions they performed during the surgeries. And because there was no objection to the qualifications of the witnesses to testify as experts, and the Estate offered nothing else that called into question the reliability of their testimony, the court overruled the Estate's objections and allowed the testimony. Therefore, we find that the district court did not abuse its discretion in admitting the challenged testimony.

---

[49] See, e.g., Nicole Hines, *Why Technology Provides Compelling Reasons to Apply a* Daubert *Analysis to the Legal Standard of Care in Medical Malpractice Cases*, 2006 Duke L. & Tech. Rev. 18 (2006); Carter L. Williams, *Evidence-Based Medicine in the Law Beyond Clinical Practice Guidelines: What Effect Will EBM Have on the Standard of Care*?, 61 Wash. & Lee L. Rev. 479 (2004); Michelle M. Mello, *Using Statistical Evidence to Prove the Malpractice Standard of Care: Bridging Legal, Clinical, and Statistical Thinking*, 37 Wake Forest L. Rev. 821 (2002).

[50] *Murray v. UNMC Physicians, supra* note 14, 282 Neb. at 271, 806 N.W.2d at 126.

### 3. ESTATE'S POSTTRIAL MOTIONS

[16] The Estate argues that the district court abused its discretion in overruling the motion for a new trial, motion for judgment notwithstanding the verdict, and motion to strike the opinions of the doctors' expert witnesses. The doctors contend that the district court properly exercised its discretion with regard to the admission of the standard of care testimony. A motion for new trial is to be granted only when error prejudicial to the rights of the unsuccessful party has occurred.[51] Because we hold that the district court did not err in admitting the testimony, we also hold that the district court did not abuse its discretion in overruling the Estate's posttrial motions.

The Estate's second assignment of error is without merit.

## VI. CONCLUSION

We conclude that the district court did not fail to perform its *Daubert*/*Schafersman* gatekeeping function. The district court therefore did not err in overruling the Estate's posttrial motions, and its judgment is affirmed.

AFFIRMED.

KELCH, J., not participating in decision.
WRIGHT, J., not participating.

---

[51] *Farmers & Merchants Bank v. Grams*, 250 Neb. 191, 548 N.W.2d 764 (1996).