Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/20/2018 09:11 AM CST

- 576 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

Farm and Garden Center, L.L.C., appellee,
v. Jim Kennedy, appellant.

___ N.W.2d ___

Filed November 20, 2018.    No. A-17-834.

1. **Expert Witnesses: Appeal and Error.** The standard for reviewing the admissibility of expert testimony is abuse of discretion.
2. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.
3. **Prejudgment Interest: Appeal and Error.** Whether prejudgment interest should be awarded is reviewed de novo on appeal.
4. **Verdicts: Juries: Appeal and Error.** A jury verdict may not be set aside unless clearly wrong, and a jury verdict is sufficient if there is competent evidence presented to the jury upon which it could find for the successful party.
5. **Damages: Appeal and Error.** On appeal, the fact finder's determination of damages is given great deference.
6. **Motions for New Trial: Appeal and Error.** A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion.
7. ____: ____. A motion for new trial should be granted only where there is error prejudicial to the rights of the unsuccessful party.
8. **Rules of Evidence: Expert Witnesses.** The admissibility of expert opinion testimony under the Nebraska rules of evidence should be determined based upon the standards first set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).
9. **Courts: Expert Witnesses.** Under the *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d 862 (2001), framework, the trial court acts as a gatekeeper to ensure the evidentiary relevance and reliability of an expert's opinion.

- 577 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

10. **Courts: Rules of Evidence: Expert Witnesses.** Before admitting expert opinion testimony under Neb. Evid. R. 702, Neb. Rev. Stat. § 27-702 (Reissue 2016), a trial court must determine whether the expert's knowledge, skill, experience, training, and education qualify the witness as an expert. If the opinion involves scientific or specialized knowledge, trial courts must also determine whether the reasoning or methodology underlying the expert's opinion is scientifically valid.

11. **Courts: Expert Witnesses.** Normally, after a court finds that an expert's methodology is valid, it must also determine whether the expert reliably applied the methodology.

12. ____: ____. In determining the admissibility of an expert's opinion, the court must focus on the validity of the underlying principles and methodology—not the conclusions that they generate. Reasonable differences in scientific evaluation should not exclude an expert witness' opinion.

13. **Trial: Expert Witnesses: Proof.** Once the validity of an expert witness' reasoning or methodology has been satisfactorily established, any remaining questions regarding the manner in which that methodology was applied in a particular case will generally go to the weight of such evidence; vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof remain the traditional and appropriate means of attacking evidence that is admissible, but subject to debate.

14. **Courts: Expert Witnesses.** An expert's opinion must be based on good grounds, not mere subjective belief or unsupported speculation.

15. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of words which are plain, direct, and unambiguous.

16. **Prejudgment Interest: Claims.** When considering prejudgment interest under Neb. Rev. Stat. § 45-103.02(2) (Reissue 2010), a two-pronged inquiry is required to determine whether a claim is liquidated. There must be no dispute either as to the amount due or as to the plaintiff's right to recover.

17. **Prejudgment Interest.** A claim for prejudgment interest must be fixed and determined or readily determinable; but it is sufficient for this purpose if it is ascertainable by computation or a recognized standard.

18. **Claims.** One has a liquidated claim only when there is no reasonable controversy as to both the plaintiff's right to recover and the amount of such recovery.

19. **Jury Instructions: Appeal and Error.** Jury instructions are subject to the harmless error rule, and an erroneous jury instruction requires reversal only if the error adversely affects the substantial rights of the complaining party.

- 578 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

20. **Jury Instructions: Presumptions.** It is presumed a jury followed the instructions given in arriving at its verdict, and unless it affirmatively appears to the contrary, it cannot be said that such instructions were disregarded.
21. **Damages: Appeal and Error.** The amount of damages to be awarded is a determination solely for the fact finder, and its action in this respect will not be disturbed on appeal if it is supported by the evidence and bears a reasonable relationship to the elements of the damages proved.

Appeal from the District Court for Madison County: James G. Kube, Judge. Affirmed.

George H. Moyer and Jack W. Lafleur, of Moyer & Moyer, for appellant.

Sean A. Minahan, of Lamson, Dugan & Murray, L.L.P., and Frederick T. Bartell, of Fitzgerald, Vetter, Temple & Bartell, for appellee.

Moore, Chief Judge, and Bishop and Arterburn, Judges.

Bishop, Judge.

## I. INTRODUCTION

Farm and Garden Center, L.L.C. (Farm & Garden), brought an action against Jim Kennedy on an unpaid balance for goods and services provided to him. Kennedy filed a counterclaim against Farm & Garden for damages based on "lost forage/ bales for the 2012 crop season," which he claimed was the result of an improper application of chemicals and fertilizers by Farm & Garden. A jury returned a verdict of $104,180.27 in favor of Farm & Garden and a verdict of $7,511.20 in favor of Kennedy on his counterclaim. Kennedy filed a motion for new trial on his counterclaim, and Farm & Garden filed a motion for prejudgment interest. The trial court denied Kennedy's motion for new trial and ordered Kennedy to pay Farm & Garden an additional $46,089.27 in prejudgment interest.

On appeal, Kennedy challenges the admission of Farm & Garden's expert's opinion, the award of prejudgment interest,

- 579 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

the jury's verdict on his counterclaim, and the denial of his motion for new trial. We affirm.

## II. BACKGROUND

In 2012, Kennedy, a farmer at the time, resided on land he referred to as his "home place" (Home Place). That year, he also rented land from the "Leuthold family" (collectively, the Leuthold Fields, or separately, Leuthold North or Leuthold South). Leuthold North (130 acres) was located directly west of the Home Place; Leuthold South (26.32 acres and 53 acres) was directly south of Leuthold North. The Leuthold Fields and the Home Place are located in Stanton County, Nebraska. During 2011, the Leuthold Fields were part of the Conservation Reserve Program (CRP), meaning it was not in row crop production. According to Farm & Garden's owner (at the time), Delwin Herbolsheimer, ground that has been in CRP "has been neglected for ten plus years, so it's going to be dead," and will need fertilizer and preemergent herbicide after the ground has been prepared for planting. A Farm & Garden employee said the Leuthold Fields were "in CRP for a reason . . . [i]t was poor ground."

Kennedy brought the Leuthold Fields back into row crop production by "using an implement to cut up residue or disk the soil." This was done multiple times and in multiple directions, between four and five times prior to planting in 2012. A Farm & Garden manager visited Kennedy's farm to discuss the type of fertilizer and chemical program to be applied to the Leuthold Fields and the Home Place, and the manager made recommendations regarding both the fertilizer and chemical program. Farm & Garden agreed to sell goods and services on account to Kennedy for the agricultural property he actively farmed. The services consisted of applying liquid and dry fertilizer and chemicals.

In 2012, Kennedy farmed 870 acres of row crops in Stanton County, of which 460 acres were planted to corn. Farm & Garden applied fertilizers and pesticides to all of the acres

- 580 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

Kennedy farmed. As relevant here, Kennedy planted corn on 209.32 acres of the Leuthold Fields and on 75.89 acres of the Home Place. In April, a Farm & Garden employee contacted Kennedy to notify him that dry fertilizer was applied to an incorrect field. Farm & Garden subsequently applied fertilizer and pesticides to all the acres of row crops that Kennedy farmed that year. Farm & Garden sent Kennedy 39 invoices with dates ranging from March through July, documenting the sale of chemicals and fertilizer and the application charges for Kennedy's purchases. Farm & Garden issued a credit for the application to the incorrect field that Kennedy did not order.

In the 2012 crop season, Stanton County experienced a drought. Kennedy testified that the corn crop on the Home Place rose to an even height and was a "healthy green" color. However, on the Leuthold Fields, there were strips of corn that were shorter compared to other strips of corn in the same field and some rows were yellow. According to Kennedy, there was "[b]arely any green to them." This effect was described by witnesses as "striping" or "streaking" in the corn.

After making observations of the fields in mid- to late May 2012, Kennedy contacted Farm & Garden, stating there was a problem with the variance in the height and coloration of crops on the Leuthold Fields. Herbolsheimer visited with Kennedy after looking at the Leuthold Fields and acknowledged there was a problem. Although Kennedy thought it was too late, Herbolsheimer planned to get more fertilizer and "top-dress" it on the Leuthold Fields. Kennedy called a Farm & Garden employee who said he thought applying more product would not be useful unless it rained, but Kennedy replied that Farm & Garden had to follow the steps Herbolsheimer ordered. Herbolsheimer sent someone with product to attempt to remediate the condition of the Leuthold Fields on June 26. According to Kennedy, he never agreed to the further application of fertilizer on the Leuthold Fields. Farm & Garden sent an invoice billing Kennedy a total of $7,511.20 for the

- 581 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

remedial application of fertilizer on the Leuthold Fields; this invoice was received as exhibit 75 at trial.

In the last few days of July 2012, Kennedy started to cut and lay down the cornstalks on the Leuthold Fields into a "windrow," with plans to use it for cattlefeed. He left some strips for checking the yield, and these were later harvested with a combine. He had windrowed 41.51 acres on the Home Place in mid-July; the other 34.38 Home Place acres were chopped for silage, and some strips were left for checking the yield (also later harvested). Kennedy let the windrowed corn material dry to approximately 20-percent moisture before baling; Kennedy had purchased a new baler "for the specific purpose of baling this type of material." He baled the corn material, making 6-foot diameter "cornstalk bales," and each bale "should have weighed a minimum of 1400 pounds." (The terms "cornstalk bales" and "stover bales" were used interchangeably at trial; however, Kennedy viewed "stover" as "what is left over after you've harvested a corn crop.") Brandon Nathan, Kennedy's full-time farmhand at the time, recorded in a notepad that he gathered 156 cornstalk bales on the Home Place and 153 bales on the Leuthold Fields; however, Nathan could not remember whether Kennedy baled Leuthold South in 2012, he could not remember pulling any bales off of Leuthold South, nor could he remember noticing any of the striping effect on Leuthold South. Kennedy testified that the electronic bale counter on his equipment produced the same counts as Nathan's recorded counts. Kennedy sold approximately 65 stover bales at $150 each, and he kept some bales to feed his livestock.

According to Herbolsheimer, the products sold to Kennedy were "on account" and the sale of chemicals, fertilizer, and application services were invoiced from May 4 through July 16, 2012. Statements which show the balance of the account indicate the new balance is due on the "10th of each month" and that a finance charge is computed "at the rate of 1.33 percent per month which is an annual percentage of 16 percent applied to the previous balance end of the month." The

- 582 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

total invoice amount for all chemicals, fertilizers, and application costs, excluding finance charges reflected in individual invoices, was $104,180.27. The district court received exhibit 83 showing this total invoice amount.

Despite receiving statements which included finance charges on overdue balances from Farm & Garden in October and November 2012, Kennedy did not make payments on his past due account until he made two separate payments of $2,500 in April 2013. These were the only payments made by Kennedy. Farm & Garden sent Kennedy a statement of the balance due on May 1 totaling $120,892.23.

In June 2013, Farm & Garden filed a complaint against Kennedy to recover $120,892.23, the amount claimed as Kennedy's unpaid account for goods and services provided during the 2012 crop year, plus interest, as of May 1. It stated that "the account accrues interest at the rate of 1.33% per month pursuant to contract and Neb. Rev. Stat. §45-101.04," and prayed for a judgment of $120,892.23 as of May 1, "together with interest thereafter." Kennedy asserted in his amended answer that Farm & Garden negligently and carelessly applied fertilizer to his farm ground and therefore breached the implied warranty of good workmanship. As a result, Kennedy claimed Farm & Garden "conferred no benefit upon [Kennedy] in the 2012 crop season and wasted the fertilizer that was applied," and therefore its complaint should be dismissed. Kennedy's amended answer included a counterclaim, which alleged that Farm & Garden breached its agreement to apply chemical and fertilizer in a workmanlike manner and that by failing to do so, this caused an irregular growth pattern of the corn crop planted. Kennedy claimed damages of $99,990 for "lost forage/bales for the 2012 crop season" and $7,600 to subsequently plant rye seed as a "cover crop," which also either did not grow "in any capacity" or grew "in an irregular pattern." Additionally, Kennedy alleged that Farm & Garden applied chemical and fertilizer to "32 acres of standing CRP" without his authorization and that such charges should be deducted from Farm &

- 583 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

Garden's claimed damages. Kennedy also asserted that Farm & Garden's failure to apply the fertilizer and chemical in a proper and workmanlike manner would cause carryover losses for the 2013 crop (this claim was not pursued at trial). Further amended pleadings were filed, but none of the amendments materially impact the issues on appeal.

At trial, Kennedy and his farmhand, Nathan, testified about the striping on the Leuthold Fields and claimed that those 209.32 acres produced only 153 bales of stover. On the other hand, they claimed the acres baled on the Home Place (which had no striping) produced 156 bales of stover. The number of acres baled on the Home Place was alleged to be 39 acres during some testimony and 41.51 acres in other testimony; the difference is insignificant to any issue on appeal. The explanation for the alleged disparity in stover bales produced per acre between the Leuthold Fields and the Home Place was the primary point of contention between the agronomy experts that Kennedy and Farm & Garden each had testify.

Kennedy's expert, Regan Kucera, opined that the cause of striping on the Leuthold Fields was due to the phosphorous application being inaccurately applied. Kucera concluded that 68 percent of the field was underapplied and that 32 percent of the field was overapplied. As to the 41.51 acres on the Home Place which Kennedy claimed produced 156 bales of stover at 1,400 pounds per bale, Kucera calculated that would be 3.76 bales per acre. Kucera compared this to the 209.32 acres on the Leuthold Fields, where the production of 153 bales of stover calculated to only .73 bales per acre. Kucera testified that environmental factors such as lack of moisture or too much heat could keep a corn plant from reaching full maturity, as well as "[m]an-made or man-managed factors" such as "inappropriate fertility, poor soil structure or just lack of nutrients applied."

Farm & Garden's expert, Michael Goedeken, agreed the fertilizer was not applied correctly; Goedeken said this was because the "spinner was not throwing the fertilizer" the correct

- 584 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

distance, which resulted in a striping effect. Goedeken testified the misapplication was noted on the invoice dated April 23, 2012, found in exhibit 71. However, Goedeken stated that the lesser amount of residue produced on the Leuthold Fields in comparison to the Home Place might be attributable to the increased drying out of the Leuthold Fields when Kennedy disked it three to four times (before planting). According to Goedeken, "the USDA states that each tillage pass takes out .25 inches of water" and "[i]n 2012 in this area, we were . . . [s]even to ten inches below normal rainfall . . . during the growing season." Goedeken stated that taking another "three-quarter to an inch away from that, we're going to cause some damage to those plants for lack of moisture when we're already in a deficit situation."

Goedeken also opined that the number of stover bales per acre reportedly harvested on either the Leuthold Fields or the Home Place was misstated. Farm & Garden called an appraiser to testify about yield estimates. The appraiser said many appraisals were done in 2012 "because it was such a dry year" and "[m]any people either abandoned fields or chopped fields. . . . that was a very common occurrence." The appraiser performed a yield estimate on Kennedy's corn crop in 2012. The appraiser estimated 4.3 bushels per acre on a 57-acre portion of Leuthold South and 5.7 bushels per acre on a 3.3-acre area also in Leuthold South. The appraiser testified that 19 acres on Leuthold South were harvested by a combine for grain. The appraiser also performed estimates on "Section 34" which was composed of Leuthold North and the Home Place. He estimated 1.7 bushels per acre for Leuthold North and 2.6 bushels per acre for the Home Place. Section 34 included 16 harvested acres. Yield estimate reports are signed by the appraiser and the farmer, and the appraiser testified that Kennedy signed the yield estimate reports he was describing.

According to Goedeken, since grain yields can be used to predict "residue or cornstalk yields," and the Leuthold Fields

- 585 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

and the Home Place had yields estimated to be below 5 bushels per acre, then Kennedy's claims related to the number of stover bales produced on each property did not add up. For example, Goedeken calculated that to achieve the 156 stover bales that Kennedy claimed was produced on 39 acres of the Home Place, the grain yield average for those 39 acres would be 88 bushels per acre. However, in 2012 in Stanton County, "the average yield according to USDA on dryland was . . . 31.3 bushel[s] per acre." And even Kennedy agreed that his grain yield per acre was under 5 bushels for the corn crop planted on the Leuthold Fields and the Home Place. Goedeken testified that the average cornstalk yield for dryland corn in Stanton County in 2012 was 1 ton or less of crop residue per acre. He calculated the 153 stover bales from the Leuthold Fields to come out "to about a half a ton per acre" and "[t]hat's pretty consistent with what I would have expected in 2012."

Kucera agreed that with drought-stressed corn, about 1 ton of silage per acre can be harvested for each 5 bushels of corn grain per acre that could have been harvested. He acknowledged that typically silage is around 70-percent moisture, so when calculating for 20-percent moisture (as in Kennedy's stover bales), Kucera stated that 5 bushels of grain yields for corn would produce about ".8 tons [of stover] per acre."

The jury returned a verdict of $104,180.27 in favor of Farm & Garden and a verdict of $7,511.20 in favor of Kennedy on his counterclaim. The district court entered judgment on the jury verdicts on March 24, 2017. On March 29, Kennedy filed a motion for new trial on his counterclaim, and on April 3, Farm & Garden filed a motion for an award of prejudgment interest on the judgment. The district court entered an order on July 12 denying Kennedy's motion for new trial and sustaining Farm & Garden's motion; the court awarded prejudgment interest in the amount of $46,089.27 in accordance with Neb. Rev. Stat. § 45-104 (Reissue 2010). Kennedy timely filed a notice of appeal.

- 586 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

## III. ASSIGNMENTS OF ERROR

Kennedy assigns, restated and reordered, that the district court erred (1) by allowing the testimony of Farm & Garden's expert witness and (2) by awarding prejudgment interest. Kennedy also claims (3) the verdict on Kennedy's counterclaim does not respond to issues submitted to the jury for decision because it is contrary to law and to the evidence of Kennedy's damages and (4) the district court erred by denying his motion for new trial on his counterclaim.

## IV. STANDARD OF REVIEW

[1,2] The standard for reviewing the admissibility of expert testimony is abuse of discretion. *Hemsley v. Langdon*, 299 Neb. 464, 909 N.W.2d 59 (2018). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Lombardo v. Sedlacek*, 299 Neb. 400, 908 N.W.2d 630 (2018).

[3] Whether prejudgment interest should be awarded is reviewed de novo on appeal. *Roskop Dairy v. GEA Farm Tech.*, 292 Neb. 148, 871 N.W.2d 776 (2015).

[4,5] A jury verdict may not be set aside unless clearly wrong, and a jury verdict is sufficient if there is competent evidence presented to the jury upon which it could find for the successful party. *Lowman v. State Farm Mut. Auto. Ins. Co.*, 292 Neb. 882, 874 N.W.2d 470 (2016). On appeal, the fact finder's determination of damages is given great deference. *Id.*

[6,7] A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Robinson v. Dustrol, Inc.*, 281 Neb. 45, 793 N.W.2d 338 (2011). A motion for new trial should be granted only where there is error prejudicial to the rights of the unsuccessful party. *Hegarty v. Campbell Soup Co.*, 214 Neb. 716, 335 N.W.2d 758 (1983).

- 587 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

## V. ANALYSIS

### 1. Expert Testimony

Kennedy argues that the district court erred by allowing the testimony of Farm & Garden's expert witness, Goedeken. Kennedy's counterclaim sought damages for "lost forage/bales" in the 2012 crop season; therefore, his claim for damages was premised on the alleged disparity in cornstalk or stover bales produced per acre between the Leuthold Fields (which had the striping effect) and the Home Place (no striping effect). Kennedy contends, "There is absolutely no foundation for [Goedeken] to say that to produce the number of bales of stover that . . . Kennedy reported would have required a corn yield of 25.7 bushels per acre from the Leuthold farm or 88 bushels per acre from his home place." Brief for appellant at 20. Before reaching the specifics of Kennedy's challenge to Goedeken's opinion, it is helpful to further set out the position taken by Kennedy's expert, Kucera.

### (a) Kennedy's Expert Witness

Kucera knew Kennedy because Kucera had been working as Kennedy's corn and soybean seed supplier. Kucera took "stover samples" from Leuthold North and the Home Place in mid-July 2012 to test for nitrates to make sure the stover would be safe to feed to livestock. He did not take samples from Leuthold South. He first sampled Leuthold North, where the stover had "already been cut and laid down into a windrow." He noticed some windrows were larger, "meaning there were more stalks in it," and some were not as large. At that time, Kennedy had not yet windrowed at the Home Place, "the stalks were still standing," and the plants "were more consistent across the field." Kucera concluded fertilizer had been inaccurately applied in 2012—specifically, that phosphorous levels were different and that the less productive plants were "in areas of the field that had low soil test values for phosphorous." Kucera stated that incorrectly applying the

- 588 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

phosphorous nutrient "early on is setting that field and those strips up for failure for multiple years."

Kucera also testified that the average yield per acre for the Leuthold Fields was less than 5 bushels per acre. The average yield per acre for the Home Place was also less than 5 bushels per acre. Kennedy testified to these same yields as well. Kucera acknowledged that Kennedy generally practiced "no-till farming," meaning a minimum amount of tillage would be done prior or during the raising of the crop. "Tillage would be turning the soil over, burying residue, those types of thing[s]." Kucera was aware that Kennedy disked (a type of tillage) the Leuthold Fields four to five times, and Kucera agreed that when a field is disked, the moisture content of the soil is decreased. He also agreed that moisture content is important because "[t]hat basically starts the whole germination and growing process." Kucera did not take soil samples from the Leuthold Fields, and he did not know whether Kennedy disked the Home Place, but agreed that under a no-till practice, "you would not do tillage."

Kucera acknowledged that the University of Nebraska Extension Service "NebGuide, Number G1846" (Nebraska Guide) tells "you that if you harvest a certain number of bushels, you can expect a certain amount of stover." But his position was that while "you cannot have grain without stover, stalks, leaves, . . . [y]ou can, however, have stover, stalks, leaves . . . and have very little grain." He testified that Kennedy's farms had very little grain, but still had stover. Kucera claimed there was no formula available to determine how much crop residue could be produced from a given yield of corn.

### (b) Farm & Garden's Expert Witness

Goedeken was expected to testify about Kennedy's cornstalk bale harvest in 2012, including (1) the alleged number of bales harvested from the Home Place in contrast to the alleged number of bales harvested from the Leuthold Fields,

- 589 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

(2) the amount of yield necessary to produce 1 ton of residue, (3) Kennedy's 2012 yield records for the Leuthold Fields and the Home Place, and (4) Goedeken's experience and knowledge of 2012 yields for dryland farms in Stanton County. During discovery, Goedeken opined that the number of bales per acre reportedly harvested on either the Leuthold Fields or the Home Place was misstated by Kennedy and his farmhand, Nathan.

Kennedy filed a motion in limine to exclude Goedeken's testimony on the first day of trial, March 13, 2017. The motion alleged that Goedeken's reasoning and methodology used to reach his conclusion was "flawed and faulty." Specifically at issue was Goedeken's reliance on an article designated in the Nebraska Guide, which included a formula for estimating the number of tons of crop residue that will be produced by a certain corn yield. Kennedy's motion asserted that the Nebraska Guide provided "a formula for estimating the number of tons of crop residue that will be produced by a certain corn yield," but that it did "not offer any information about drought stressed crops or the residue produced by drought stressed crops." Kennedy claimed that Goedeken's opinion "assumes that corn plants which fail to produce an ear of corn also do not produce a stalk or leaves. He opines that to produce stover in the quantities claimed by [Kennedy], there must be corn."

Before the jury was brought in on the second day of trial, the court heard arguments on Kennedy's motion in limine. Kennedy's counsel argued it is illogical to say that "since we didn't raise any corn, we didn't have any stalks," so it cannot be said that "you have to have 'X' number of bushels of corn in order to have 'X' number of tons of silage." He concluded, "It's just not scientifically true or accurate," and he informed the court it was "not supposed to allow junk science to get to the jury, and this is pretty junkie." Following a brief recess, the district court stated from the bench that it did not think Goedeken's opinion was that since the crop did not produce

- 590 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

any grain, then it could not have produced any stover. Rather, the court stated it understood the opinion to say that "to produce that much stover would have required a yield of 88 bushels per acre and that nowhere in Stanton County did any one producer produce that much dryland corn." The court found that Goedeken's methodology could be applied to the facts at issue and overruled Kennedy's motion in limine.

[8,9] The Nebraska Evidence Rules provide: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Neb. Evid. R. 702, Neb. Rev. Stat. § 27-702 (Reissue 2016). The Nebraska Supreme Court held in *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d 862 (2001), that the admissibility of expert opinion testimony under the Nebraska rules of evidence should be determined based upon the standards first set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). Under the *Daubert/ Schafersman* framework, the trial court acts as a gatekeeper to ensure the evidentiary relevance and reliability of an expert's opinion. *Hemsley v. Langdon*, 299 Neb. 464, 909 N.W.2d 59 (2018).

[10,11] As the Nebraska Supreme Court stated in *King v. Burlington Northern Santa Fe Ry. Co.*, 277 Neb. 203, 225-26, 762 N.W.2d 24, 42 (2009):

Before admitting expert opinion testimony under Neb. Evid. R. 702, a trial court must determine whether the expert's knowledge, skill, experience, training, and education qualify the witness as an expert. If the opinion involves scientific or specialized knowledge, trial courts must also determine whether the reasoning or methodology underlying the expert's opinion is scientifically valid. Under *Daubert*, evidentiary reliability depends on scientific validity. Normally, after a court finds that the

- 591 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

expert's methodology is valid, it must also determine whether the expert reliably applied the methodology.
Based on the record and briefs on appeal, Goedeken's qualifications as an expert are not in dispute. Therefore, we first evaluate the scientific validity of his methodology and then consider Goedeken's application of that methodology.

(b) Scientific Validity
of Methodology

In evaluating the validity of scientific testimony, a trial court considers a number of factors. These include (1) whether the theory or technique can be, and has been, tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation; and (4) the "'"general acceptance"'" of the theory or technique. See *Hemsley*, 299 Neb. at 474, 909 N.W.2d at 68 (setting out *Daubert* reliability factors). The U.S. Supreme Court noted that this reliability test is "'flexible'" and that the district court is given "the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." See *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 142, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) (discussing *Daubert* factors).

[12] In determining the admissibility of an expert's opinion, the court must focus on the validity of the underlying principles and methodology—not the conclusions that they generate. *Burlington Northern Santa Fe Ry. Co., supra*. Reasonable differences in scientific evaluation should not exclude an expert witness' opinion. *Id.*

Noting these principles, we consider the methodology used by Goedeken to form his opinion. At the hearing on Kennedy's motion in limine, the district court received into evidence exhibit 104, Farm & Garden's third supplemental answers to interrogatories. Exhibit 104 included the subject matter of

- 592 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

Goedeken's testimony, facts he relied upon, opinions he was expected to give, and grounds for his opinions.

Exhibit 104 states:

> It is expected that . . . Goedeken will testify that according to the deposition, . . . Kennedy stated the home farm yielded 4 cornstalk bales an acre. Notes provided by . . . Nathan indicate the Home Place yielded 156 bales on approximately 39 acres. . . .
>
> . . . [T]he Leuthold fields allegedy produced 153 cornstalk bales on a total of 211.2 acres or .72 bales per acre.

Exhibit 104 further indicates that Goedeken calculated the Home Place would have had to produce 88 bushels per acre to achieve the number of stover bales claimed for the 39 acres. Further, Goedeken calculated the Leuthold Fields would have averaged 25.7 bushels per acre, yet appraisals indicated the Leuthold Fields averaged 3.6 bushels per acre. Goedeken's conclusion, as stated in exhibit 104, is that because of the 2012 drought, Goedeken was not aware of any dryland corn in Stanton County that produced 88 bushels of corn per acre, and that therefore, the number of stover bales claimed to have been produced on the Leuthold Fields or the Home Place was misstated. Also, because of the proximity of the fields, Goedeken did not think the grain yields and residue would have been "dramatically different."

To reach his opinion, Goedeken relied on his experience and knowledge of 2012 yields for dryland corn in Stanton County, Kennedy's deposition testimony, Nathan's notes, photographs of the Leuthold Fields and the Home Place, and Kennedy's crop insurance records. In performing calculations regarding the Leuthold Fields and the Home Place, Goedeken used a formula from the Nebraska Guide. Goedeken assumed the cornstalk bale weight, noting that bale weights can differ. Goedeken then compared his calculation of what he would expect the bales per acre to have been in 2012 for the Leuthold Fields and the Home Place with information in Kennedy's deposition, Nathan's notes, and crop insurance records. Goedeken's

- 593 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

calculation using the Nebraska Guide is a mathematical formula to which he simply inputted numbers based on the information noted.

At the hearing on Kennedy's motion in limine, both parties referred to the Nebraska Guide as a "peer-reviewed" publication, which is a factor that goes to the reliability of Goedeken's opinion. Farm & Garden claimed both Goedeken and Kucera used the same peer-reviewed articles, including the Nebraska Guide. (Later during trial, Kucera did in fact testify that he relied on the same Nebraska Guide as Goedeken.) Farm & Garden also argued Kucera was relying on "Iowa State articles" that said "basically . . . the same thing. You can expect a certain amount of dry corn stover from a certain amount of bushels produced." Goedeken's and Kucera's use of the Nebraska Guide supports the reliability factor that the methodology within the Nebraska Guide is generally accepted within the field of agronomy. Although Kennedy argued Kucera used the publication only to analyze and contradict Goedeken's opinion, we note that Kucera testified that the Nebraska Guide is commonly used in reference by people he knows and by his customers.

The district court took a brief recess to review the information, and then it overruled the motion in limine from the bench. The court found that Goedeken's methodology could be applied to the facts at issue in the case. The district court disagreed with Kennedy's characterization of Goedeken's opinion; the court stated, "I don't think that the opinion is that since the crop didn't produce any grain, that, therefore, it couldn't have produced any stover." The court understood Goedeken's opinion to be that to produce the amount of stover claimed by Kennedy "would have required a yield of 88-bushels per acre and that nowhere in Stanton County did any one producer produce that much dryland corn."

When making the determination of admissibility of Goedeken's opinion, the district court had access to exhibit 104 which showed Goedeken's methodology and how he applied

- 594 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

the methodology to the facts of the case. It also had access to the Nebraska Guide that Goedeken relied upon, as it was attached to Kennedy's motion in limine for reference, and Goedeken later testified to the words of the paragraph he relied upon as a "rule of thumb." Under *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 139, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999), the district court is entitled to a "broad latitude" on the issue of reliability where it received information regarding the peer-reviewed nature of the Nebraska Guide publication and reliance on the publication by both agronomist experts in the case.

The validity of Goedeken's methodology was properly established.

### (c) Application of Methodology

[13] Once a methodology has been established, the court must then determine whether the reasoning or methodology can be properly applied to the facts in issue. See *McNeel v. Union Pacific RR. Co.*, 276 Neb. 143, 753 N.W.2d 321 (2008). This second inquiry, sometimes referred to as "'"fit,"'" assesses whether the scientific evidence will assist the trier of fact to understand the evidence or to determine a fact in issue by providing a "'valid scientific connection to the pertinent inquiry as a precondition to admissibility.'" *McNeel*, 276 Neb. at 153, 753 N.W.2d at 330 (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)). Once the validity of an expert witness' reasoning or methodology has been satisfactorily established, any remaining questions regarding the manner in which that methodology was applied in a particular case will generally go to the weight of such evidence. *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d 862 (2001). Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof remain the traditional and appropriate means of attacking evidence that is admissible, but subject to debate. *Id.*

- 595 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

At issue here was whether Goedeken's methodology using grain yields to estimate stover yields could be properly applied to explain the difference between the stover bale production on the Leuthold Fields and the Home Place in 2012. It was Goedeken's opinion that the number of stover bales per acre reportedly harvested on either the Leuthold Fields or the Home Place was misstated. As to that conclusion, Kennedy's counsel specifically challenged Goedeken during cross-examination, as set forth in the following colloquy:

Q: Okay. Now, the paragraph that you relied upon says, "The amount of crop residue produced is related to grain production. Approximately one ton of crop residue at 10 percent moisture is produced with 40 bushels of corn or grain sorghum, 30 bushels of soybeans and 20 bushels of wheat."

A: Correct.

Q: That's a rule of thumb?

A: Rule of thumb.

Q: Okay. But it doesn't say that if there is no corn that there will be no residue, does it?

A: No, it does not.

Q: So what you're telling the ladies and gentlemen of the jury here is that you think the amount of crop residue that . . . Kennedy reported from his acres, 40.51, is too high?

A: From my experiences in 2012, that's quite a bit of residue.

Q: Quite a bit. Impossible?

A: Improbable.

To determine the cornstalk or stover yield per acre based on grain yield, Goedeken used data collected from the U.S. Department of Agriculture that reported the 10-year average dryland yield for Stanton County was 136.8 bushels per acre and that the average yield in 2012 was 31.3 bushels per acre. Goedeken's reliance on this information was not challenged.

- 596 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

Goedeken then divided the 10-year average dryland yield (136.8 bushels per acre) by 40 bushels (amount of bushels of corn in Nebraska Guide formula to produce 1 ton of stover) to get an average of 3.42 tons of residue produced per acre in Stanton County for dryland corn based on the 10-year average. However, in 2012, Stanton County's average yield for dryland corn was only 31.3 bushels per acre. Since the average corn crop yield in 2012 was only about 23 percent of the 10-year average, then the estimated stover yield would be similarly reduced (based on our calculations, this results in a stover yield of approximately .78 of a ton per acre). This is consistent with Goedeken's testimony that the average cornstalk yield for dryland corn in Stanton County in 2012 was 1 ton or less of crop residue per acre. He then calculated the 153 stover bales from the Leuthold Fields to come out "to about a half a ton per acre" and "[t]hat's pretty consistent with what I would have expected in 2012." Goedeken's application of the Nebraska Guide formula to Stanton County and more specifically to the yield estimates for the properties at issue was simply a matter of mathematics. His testimony at trial regarding his yield estimates under the Nebraska Guide matched the same calculations contained in exhibit 104 and considered at the motion in limine. Accordingly, the district court did not abuse its discretion by allowing this testimony.

Further, as to whether the Nebraska Guide formula could be properly applied to the facts involving Kennedy's drought-stressed crops, the district court determined that the issue of applicability could be addressed through cross-examination and challenging the credibility of the witness. As indicated in *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d 682 (2001), the weight to be given Goedeken's testimony by the jury could be impacted by vigorous cross-examination and the presentation of contrary evidence. In this case, Kennedy had ample opportunity to challenge Goedeken's testimony regarding the Nebraska Guide articles, as noted in the example above.

- 597 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

The record shows Goedeken was sufficiently questioned not only through cross-examination, but also through a developed direct examination regarding his application of the Nebraska Guide formula to the facts of this case.

### (d) Summary

[14] Goedeken's opinion was based on more than mere subjective belief or unsupported speculation, even if, as the record revealed, some numbers Goedeken used were not precise. The numbers Goedeken used in forming his opinion—from the variety of sources he consulted, as well as his personal knowledge—were acceptable to rely upon under Neb. Evid. R. 703, Neb. Rev. Stat. § 27-703 (Reissue 2016) (facts or data expert relies upon may be "perceived by or made known to him at or before the hearing" and "need not be admissible in evidence" if experts in field reasonably rely on such facts or data in forming opinions or inferences). An expert's opinion must be based on good grounds, not mere subjective belief or unsupported speculation. *King v. Burlington Northern Santa Fe Ry. Co.*, 277 Neb. 203, 762 N.W.2d 24 (2009). However, courts should not require absolute certainty. *Id.*

The formula Goedeken relied upon to perform his calculations challenging Kennedy's claimed stover yield production came from the Nebraska Guide, a peer-reviewed source recognized as generally accepted within the agronomy field. Even Kucera referred to the Nebraska Guide; he simply disagreed with the conclusions reached by Goedeken. However, we note that even Kucera agreed that 5 bushels of grain yields for corn would produce about ".8 tons [of stover] per acre."

In determining admissibility of an expert's opinion, the court must focus on the validity of the underlying principles and methodology—not the conclusions that they generate. *Burlington Northern Santa Fe Ry. Co., supra*. Reasonable differences in scientific evaluation should not exclude an expert witness' opinion. *Id.* We conclude the district court did not abuse its discretion in admitting Goedeken's testimony.

- 598 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

2. Prejudgment Interest

Following the jury's verdict in its favor, Farm & Garden filed a "Motion to Award Interest on Judgment," in which it claimed entitlement to prejudgment interest pursuant to § 45-104. The district court entered an order on July 12, 2017, awarding prejudgment interest of $46,089.27. We note that although the July 12 order indicates that Farm & Garden's motion for interest (and Kennedy's motion for new trial) were heard on May 5, the bill of exceptions for that hearing is not contained in our record. Nevertheless, the July 12 order informs us of the arguments made at that hearing. The order initially states:

> [Kennedy] first argues that [Farm & Garden] had initially requested interest pursuant to Neb. Rev. Stat. §45-101.04, but that since the verdict, [Farm & Garden's] statutory basis for interest has changed, implying that [Farm & Garden] cannot change the statutory basis for its request. The Court disagrees. [Kennedy] has provided no case precedent for this proposition, nor does the statutory language impart such a restriction. On the contrary, the statutory language "shall be allowed" mandates the payment of interest in the event that the facts of the case comport with the opportunity to allow interest. Such is the situation in the present case.

We first take up Kennedy's argument about Farm & Garden changing its statutory basis for interest. It is true that Farm & Garden's operative pleading stated that Kennedy had "an unpaid account for goods, services, and interest in the sum of $120,892.23, and the account accrues interest at the rate of 1.33% per month pursuant to contract and Neb. Rev. Stat. §45-101.04." Kennedy asserts that Farm & Garden "abandoned §45-101.04." Reply brief for appellant at 4. This would appear to be true. Neb. Rev. Stat. § 45-101.04 (Reissue 2010) provides a basis for Farm & Garden's initial claim of 1.33-percent interest per month on unpaid balances after 30 days; it states, in relevant part:

- 599 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

The limitation on the rate of interest provided in section 45-101.03 [any rate of interest may be agreed upon, not exceeding 16 percent on an unpaid principal balance] shall not apply [in a number of circumstances, including]:

. . . .

(7) Interest charges made on open credit accounts by a person who sells goods or services on credit when the interest charges do not exceed one and one-third percent per month for any charges which remain unpaid for more than thirty days following rendition of the statement of account.

At trial, Herbolsheimer testified that his financial arrangement with customers did not involve a "formal credit app," but, rather, customers, like Kennedy, were allowed to maintain open accounts for goods and services. Herbolsheimer stated that open accounts bear an interest rate or finance charge of 1.33 percent per month, "which is an annual percentage of 16 percent applied to the previous balance end of the month." Kennedy challenged Farm & Garden's attempt to collect its 1.33-percent monthly finance charge, claiming that there had been no agreement between Farm & Garden and Kennedy as to a finance charge. In response to questions asked by Kennedy's attorney during cross-examination, Herbolsheimer admitted that Kennedy never signed "any kind of a paper" with him, nor did Herbolsheimer have a conversation with Kennedy about paying "1.33 percent per month." Further, on appeal, Kennedy reiterates that there was never an agreement with Farm & Garden that he "would pay any rate of interest on his account." Brief for appellant at 12. Kennedy contends that § 45-101.04 "allows the parties to agree on one and one third percent per month but if there is no agreement, this statute does not apply." Brief for appellant at 12.

Ultimately, rather than seeking the 16 percent per annum interest to which it may have been entitled under § 45-101.04, Farm & Garden instead sought the 12 percent per annum

- 600 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

interest available under § 45-104. Kennedy contends that Farm & Garden could not change the statutory basis for its request for interest. Like the district court, we disagree. We note that Farm & Garden did state in its operative pleading that it was seeking interest; specifically, it prayed for a judgment of $120,892.23 (for amounts accrued, including finance charges, as of May 1, 2013), "together with interest thereafter." There was no question that Farm & Garden was seeking interest on unpaid balances preceding the entry of a final judgment. Therefore, there was no surprise or prejudice to Kennedy on this issue, nor is there any authority suggesting Farm & Garden was precluded from requesting prejudgment interest under § 45-104 rather than under § 45-101.04 once a judgment was obtained. Further, if a statutory basis exists for an award of interest, the Nebraska Supreme Court has held that interest can be awarded even if the petition is silent as to a request for interest. See *Thacker v. State*, 193 Neb. 817, 229 N.W.2d 197 (1975), *overruled in part on other grounds, Langfeld v. Department of Roads*, 213 Neb. 15, 328 N.W.2d 452 (1982) (although petition did not pray for interest, party's right to interest rested upon statutory grounds and not upon prayer).

We next consider the district court's determination that the language "interest shall be allowed" as set forth in § 45-104 "mandates the payment of interest in the event that the facts of the case comport with the opportunity to allow interest." Section 45-104 states:

> *Unless otherwise agreed, interest shall be allowed at the rate of twelve percent per annum on money due on any instrument in writing*, or on settlement of the account from the day the balance shall be agreed upon, on money received to the use of another and retained without the owner's consent, express or implied, from the receipt thereof, and on money loaned or due and withheld by unreasonable delay of payment. *Unless otherwise agreed or provided by law, each charge with respect to unsettled*

- 601 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

> *accounts between parties shall bear interest from the date*
> *of billing unless paid within thirty days from the date*
> *of billing.*

(Emphasis supplied.)

Section 45-104 applies to four types of judgments: (1) money due on any instrument in writing; (2) settlement of the account from the day the balance shall be agreed upon; (3) money received to the use of another and retained without the owner's consent, express or implied, from the receipt thereof; and (4) money loaned or due and withheld by unreasonable delay of payment. *Fitzgerald v. Community Redevelopment Corp.*, 283 Neb. 428, 811 N.W.2d 178 (2012). Section 45-104 allows an interest rate of 12 percent in the four circumstances enumerated when an interest rate has not otherwise been agreed upon. Further, that interest shall accrue from the date of billing when amounts due are not paid within 30 days of billing, unless otherwise agreed or provided by law. Unlike Neb. Rev. Stat. § 45-103 (Reissue 2010), which provides for postjudgment interest, § 45-104 allows for prejudgment interest. See *BSB Constr. v. Pinnacle Bank*, 278 Neb. 1027, 776 N.W.2d 188 (2009) (§ 45-104 provides interest rate for prejudgment interest upon happening of events outlined in statute). Of the four types of possible judgments set forth in § 45-104 which would allow for prejudgment interest, the only one applicable here relates to "money due on any instrument in writing."

Although not argued in the brief to this court, Kennedy's counsel asserted at oral argument that § 45-104 does not apply here because on "money due on instruments in writing" there has "to be a note." However, the Nebraska Supreme Court and this court have applied § 45-104 to different types of instruments in writing. See, e.g., *In re Estate of Peterson*, 230 Neb. 744, 433 N.W.2d 500 (1988) (will is instrument in writing; therefore, when interest is required to be paid on pecuniary devise, legal rate of interest is 12 percent per annum, as required by § 45-104); *Valley Cty. Sch. Dist. 88-0005 v.*

- 602 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

*Ericson State Bank*, 18 Neb. App. 624, 627, 790 N.W.2d 462, 465 (2010) (§ 45-104 applied to funds held under escrow agreement; "prejudgment interest accrues on the unpaid balance of liquidated claims arising from an instrument in writing from the date the cause of action arose until the entry of judgment, pursuant to Neb. Rev. Stat. §§ 45-103.02(2) (Reissue 2004) and 45-104").

[15] In determining whether the invoices and statements setting forth the amounts due from Kennedy and payable to Farm & Garden constitute "money due on any instrument in writing," we apply a basic legal principle, namely, that statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of words which are plain, direct, and unambiguous. *Heiden v. Norris*, 300 Neb. 171, 912 N.W.2d 758 (2018). We conclude that the plain and ordinary meaning of "money due on any instrument in writing" under § 45-104 includes written invoices and billing statements sent by a business to a customer for products and services sold, and unless otherwise agreed or provided by law, such unsettled accounts between the parties shall bear interest from the date of billing unless paid within 30 days from the date of billing. Accordingly, Farm & Garden's invoices and statements constitute "money due on any instrument in writing" under § 45-104.

With regard to Neb. Rev. Stat. § 45-103.02 (Reissue 2010), the district court's July 12, 2017, order states:

Next, [Kennedy] argues that statutory interest should not be allowed because [Farm & Garden's] claim is not "liquidated." . . . In this case, the total amount of the unpaid invoices totaling $104,180.27 was not in controversy. However, [Kennedy] argues that no interest should be allowed because the litigation put into question [Farm & Garden's] right to recover on these invoices, as addressed in [Kennedy's] counterclaim of negligent application and subsequent damages. When a reasonable controversy exists concerning the claimant's right

- 603 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

to recover or the amount of such recovery, the claim is unliquidated, and prejudgment interest is not allowed. [Citation omitted.]

. . . [T]he dispute addressed in the litigation was specifically directed at [Farm & Garden's] alleged misapplication of phosphorous on the Leuthold field, along with the attempted "rescue" application on the same field in June, 2012. There was no evidence submitted during the trial or argued before the jury which called into question [Farm & Garden's] attempt to recover the money owed for all the other chemicals on [Kennedy's] other lands during 2012. These invoices were not part of the litigated controversy, nor was [Farm & Garden's] right to recover those amounts.

Although the district court did not specifically refer to § 45-103.02 in its order, it is evident that it considered the requirements for prejudgment interest under that statute based on its discussion of liquidated and unliquidated claims. Both parties make arguments on appeal specific to § 45-103.02, which states, in relevant part:

(1) Except as provided in section 45-103.04 [exceptions not applicable here], interest as provided in section 45-103 shall accrue on the unpaid balance of *unliquidated claims* from the date of the plaintiff's first offer of settlement which is exceeded by the judgment until the entry of judgment if all of the following conditions are met:

. . . .

(2) Except as provided in section 45-103.04 [exceptions not applicable here], interest as provided in section 45-104 shall accrue on the unpaid balance of *liquidated claims* from the date the cause of action arose until the entry of judgment.

(Emphasis supplied.) Section 45-103.02(1) is not applicable here. That subsection provides for prejudgment interest (calculated under § 45-103) on the unpaid balance of *unliquidated*

- 604 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

*claims* in those circumstances where an offer to settle by the plaintiff has been refused and a judgment is awarded which exceeds the offer. See *Martensen v. Rejda Bros.*, 283 Neb. 279, 808 N.W.2d 855 (2012). However, § 45-103.02(2) provides for prejudgment interest (determined under § 45-104) on the unpaid balance of *liquidated claims*. Prejudgment interest under § 45-103.02(2) is "recoverable only when the claim is liquidated, that is, when there is no reasonable controversy as to either the plaintiff's right to recover or the amount of such recovery." *Fitzgerald v. Community Redevelopment Corp.*, 283 Neb. 428, 461, 811 N.W.2d 178, 203 (2012).

We pause here to note that it has previously been argued that §§ 45-103.02 and 45-104 are "alternate routes to recover prejudgment interest and that if the case is a type enumerated in § 45-104," then whether there is a reasonable controversy is irrelevant. *Brook Valley Ltd. Part. v. Mutual of Omaha Bank*, 285 Neb. 157, 171, 825 N.W.2d 779, 791 (2013). In other words, if interest is authorized under § 45-104, then prejudgment interest can be awarded without regard for the prejudgment interest requirements under § 45-103.02(2). The Nebraska Supreme Court opted to not resolve that issue in *Brook Valley Ltd. Part.*, since it concluded that the facts in that case did not fall under any of the enumerated categories of § 45-104, "[s]o regardless which approach is correct, whether prejudgment interest is proper depends on whether this case presented a reasonable controversy." 285 Neb. at 171, 825 N.W.2d at 791. See, also, *BSB Constr. v. Pinnacle Bank*, 278 Neb. 1027, 1043, 776 N.W.2d 188, 200 (2009) (party claimed entitlement to prejudgment interest based on two distinct theories, either under § 45-103.02 or § 45-104; facts failed to support prejudgment interest "under either theory"). But see *Records v. Christensen*, 246 Neb. 912, 918, 524 N.W.2d 757, 762 (1994) (rejection of plaintiff's argument that § 45-104 provides an alternative to § 45-103.02 under which to award prejudgment interest; "even if a litigant's action is one of those actions listed in § 45-104, that party first must comply

- 605 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

with the requirements of § 45-103.02 to be entitled to prejudgment interest at that rate"). Since the parties and the district court in the present matter considered prejudgment interest under the requirements of both §§ 45-103.02 and 45-104, we will do the same here.

[16] When considering prejudgment interest under § 45-103.02(2), a two-pronged inquiry is required to determine whether a claim is liquidated. See *BSB Constr., supra*. There must be no dispute either as to the amount due or as to the plaintiff's right to recover. *Id*. When damages are liquidated and no reasonable controversy exists, the plaintiff is "entitled to prejudgment interest as a matter of law on that amount." *Cheloha v. Cheloha*, 255 Neb. 32, 44, 582 N.W.2d 291, 301 (1998). See, also, *Abbott v. Abbott*, 188 Neb. 61, 195 N.W.2d 204 (1972) (where amount of claim is liquidated, compensation in form of prejudgment interest is allowed as matter of right).

[17] A claim for prejudgment interest must be fixed and determined or readily determinable; but it is sufficient for this purpose if it is ascertainable by computation or a recognized standard. See *Schmidt v. Knox*, 191 Neb. 302, 215 N.W.2d 77 (1974). If there is a dispute as to either the amount due or the plaintiff's right to recover, the Nebraska Supreme Court has stated "'the claim is generally considered to be unliquidated and prejudgment interest is not allowed.'" *Graff v. Burnett*, 226 Neb. 710, 718, 414 N.W.2d 271, 277 (1987).

The district court awarded Farm & Garden $46,089.27 in prejudgment interest, which was calculated on only part of the $104,180.27 judgment the jury awarded to Farm & Garden. The court deemed $81,933.48 of the judgment to be liquidated and subject to prejudgment interest under § 45-104 at a rate of 12 percent per annum from the date of the last billing. To reach the $81,933.48 figure, the district court subtracted from the total judgment amount the sums it deemed to be in controversy. The court found $22,246.79 in controverted charges; these included $13,985.59 and $750 for the phosphorous

- 606 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

application on the Leuthold Fields noted in exhibit 71, as well as the $7,511.20 charge for the remedial application to the Leuthold Fields noted in exhibit 75. The court subtracted $22,246.79 from the jury's verdict of $104,180.27 to arrive at $81,933.48, "which the Court finds to be liquidated and subject to prejudgment interest pursuant to Neb. Rev. Stat. §45-104." It then performed the following mathematical calculation:

> Accordingly, 12% prejudgment interest began to accrue against $81,933.49 on July 16, 2012, the date of the last billing as shown on Exhibit 83. This interest does not compound. . . . 12% interest on $81,933.48 equals $9,832.02 per year, or $26.94 per day [for] 1,711 days. . . . [P]rejudgment interest amounts to $46,089.27.

Kennedy contends that Farm & Garden's claim was not liquidated because his counterclaim for damages resulting from the misapplication of fertilizer created a dispute as to both Farm & Garden's right to recover and the amount owed. He also claims that Farm & Garden's "claim was disputed in part because it included prejudgment interest." Brief for appellant at 12. At oral argument, Kennedy's counsel argued that every Farm & Garden invoice had the 16-percent interest included and that therefore, all the invoices were in dispute because the parties had not agreed upon the interest.

Farm & Garden argues there was no reasonable controversy because "Kennedy offered no evidence or expert testimony to contend that the amount set forth in Farm [&] Garden's invoices and bills was unfair, unreasonable, or the charges for chemical and fertilizer were excessive." Brief for appellee at 20. "Instead, the only controversy that existed was the amount, if any, that Kennedy was entitled to receive relating to his allegations of improper application of chemical and fertilizer. However, those are two separate issues." *Id*. "No reasonable controversy existed that Farm [&] Garden was entitled to the fair and reasonable value of the chemical and fertilizer it applied to Kennedy's fields." *Id*.

- 607 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

Both parties acknowledged at oral argument that the $104,180.27 awarded to Farm & Garden represented the charges for products and services Farm & Garden supplied to all of Kennedy's fields, not just the contested Leuthold Fields. Farm & Garden points out that the district court subtracted the billings reflected in exhibits 71 and 75, since these were the only charges it deemed to be in dispute. Therefore, Farm & Garden argues that its claim was liquidated because there was evidence making it possible to compute the amount of recovery with exactness (i.e., the invoices showing amounts owed).

We agree with Farm & Garden and the district court that $81,933.48 of the $104,180.27 jury verdict in favor of Farm & Garden was not in controversy and could be readily determined. The amounts reflected in exhibits 71 and 75 were the only amounts disputed in the course of trial, and these were the amounts the district court subtracted from the total judgment to determine the prejudgment interest owed. There was no testimony or other evidence to suggest Kennedy did not wish to receive the other products and application services provided by Farm & Garden, and as asserted by Farm & Garden, there was no evidence that those products and services were charged at an unfair or unreasonable amount. Herbolsheimer attested that the invoice charges for various products and application services were for a fair and reasonable price. Kennedy's counterclaim sought separate damages based on his claim that his cornstalk or stover production was less than it should have been. His counterclaim did not change the fact that the charges were incurred and owed to Farm & Garden. Exhibit 83 is a chart that lists all the chemicals, fertilizer, and application costs in each invoice, totaling $104,180.27. Even if Kennedy disputed the 1.33-percent monthly finance charge noted on the invoices for payments not made in 30 days, he offered no evidence to dispute that he owed the $104,180.27 in product and services he received from Farm & Garden, nor that the charges were erroneous or unreasonable.

- 608 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

Farm & Garden's uncontroverted amounts were readily determinable by computation; all that was required was addition of the total amount of the invoice charges. Herbolsheimer testified the total amount on exhibit 83 shows just the invoice amounts due on Kennedy's account; they did not include finance charges. Also, exhibit 83 reflects the credit issued for Farm & Garden's erroneous application of product to a field which Kennedy did not order, meaning this amount was not factored into the $104,180.27 total.

The district court concluded that the invoices totaling this amount "were not part of the litigated controversy, nor was [Farm & Garden's] right to recover those amounts." Further, the court stated that "the refusal of [Kennedy] to pay those additional invoices . . . did not place those additional invoices into controversy."

[18] The Nebraska Supreme Court has made it clear that one has a liquidated claim only when there is no reasonable controversy as to both the plaintiff's right to recover and the amount of such recovery. See *Countryside Co-op v. Harry A. Koch Co.*, 280 Neb. 795, 790 N.W.2d 873 (2010). Farm & Garden's claim qualified as a liquidated claim because there was an undisputed amount due which was readily determinable and there was no dispute as to Farm & Garden's right to recover that amount. The district court did not err in allowing prejudgment interest at the statutory rate prescribed under § 45-104 on the liquidated portion of the judgment in favor of Farm & Garden.

### 3. Verdict on Counterclaim

Kennedy asserts that the verdict on his counterclaim is contrary to the law and to the evidence. The jury returned a verdict of $7,511.20 in favor of Kennedy on his counterclaim. The amount of $7,511.20 is equal to the cost billed to Kennedy for the remedial application of chemicals to Kennedy's corn crop in the Leuthold Fields. Kennedy claims that the verdict for this amount does not appropriately assess his damages,

- 609 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

which he contends should have been for the loss of stover, not for the amount of an invoice. While it is true that the verdict in Kennedy's favor perfectly matches the invoice amount, we cannot say the jury's decision to award this particular amount was clearly wrong. See *Lowman v. State Farm Mut. Auto. Ins. Co.*, 292 Neb. 882, 874 N.W.2d 470 (2016) (jury verdict may not be set aside unless clearly wrong; jury verdict is sufficient if there is competent evidence presented to jury upon which it could find for successful party).

[19] Jury instruction No. 2 set forth that Kennedy's counterclaim alleged that Farm & Garden's application of fertilizer was negligent and resulted in an irregular growth pattern "and resulted in damages to [Kennedy] in the form of lost forage/bales causing him damages." Further, Kennedy had to prove, by a greater weight of the evidence, (1) that Farm & Garden was negligent, (2) that the negligence was the proximate cause of the alleged damage, and (3) the nature and extent of "plaintiff's" damages, if any. We note the reference to "plaintiff's" damages should say "defendant's" damages. Neither party's brief directs us to this error; regardless, we consider the error harmless in light of the totality of the instructions given to the jury. See *Bunnell v. Burlington Northern RR. Co.*, 247 Neb. 743, 745, 530 N.W.2d 230, 231 (1995) (stating that "[j]ury instructions are subject to the harmless error rule, and an erroneous jury instruction requires reversal only if the error adversely affects the substantial rights of the complaining party").

Jury instruction No. 6 stated that if the jury found Farm & Garden was negligent and that negligence was the proximate cause of damage to Kennedy's crops, then the jury "must decide how much money it will take to compensate [Kennedy] for that damage." If the jury found Kennedy's crop was injured, but not destroyed, Kennedy was "entitled to recover the market value the crop would have[,] had it had not been injured, minus any market value of the injured crop, and minus any savings to [Kennedy] in the cost of production."

- 610 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

As Farm & Garden noted in its brief, market value was not defined.

Finally, jury instruction No. 13 told the jury to consider Farm & Garden's claim for payment of the value of the bills and invoices separately from Kennedy's claim for damages relating to the alleged negligent application of fertilizer. The jury was instructed to first determine the amount of money to which Farm & Garden was entitled for the fair and reasonable value of its products and services; Farm & Garden "is then entitled to a judgment against [Kennedy] in that amount." The jury was to then determine "the amount of money to which [Kennedy was] entitled for any lost forage/stover bales resulting from any negligent application of fertilizer for the 2012 crop season"; Kennedy "is then entitled to a judgment against [Farm & Garden] in that amount."

[20,21] Viewing the totality of the instructions, it was made clear to the jury that it was to determine any damages owed to Farm & Garden and, then separately, any damages owed to Kennedy. It is presumed a jury followed the instructions given in arriving at its verdict, and unless it affirmatively appears to the contrary, it cannot be said that such instructions were disregarded. *In re Estate of Clinger*, 292 Neb. 237, 872 N.W.2d 37 (2015). The amount of damages to be awarded is a determination solely for the fact finder, and its action in this respect will not be disturbed on appeal if it is supported by the evidence and bears a reasonable relationship to the elements of the damages proved. *World Radio Labs. v. Coopers & Lybrand*, 251 Neb. 261, 557 N.W.2d 1 (1996).

Kennedy's argument that damages should have been for loss of stover, not for the amount of an invoice, interprets the jury instructions and the jury's verdict too narrowly. We agree with Farm & Garden's explanation that "the jury had sufficient evidence to find Kennedy suffered no loss of cornstalk yield, or a reduction in the number of bales, but suffered damages in the amount of the additional inputs that he was obligated to pay; the 'fix' in the amount of $7,511.20." Brief for appellee at

- 611 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
FARM & GARDEN CTR. v. KENNEDY
Cite as 26 Neb. App. 576

27. Thus, "the jury awarded Kennedy the only damage proximately caused by the misapplication that Kennedy was able to prove at trial." *Id*. In that way, based on competent evidence presented to the jury, the damages amount was effectively the same as the amount of the invoice corresponding with the remedial "top-dress" of fertilizer.

The damages amount of $7,511.20 is supported by the evidence and bears a reasonable relationship to the elements of damages proved. Under the limited standard of review for jury verdicts, we cannot conclude that the jury verdict was clearly wrong, since there is competent evidence on which the jury could have reached this specific amount of damages for Kennedy. Because the fact finder's determination of damages is given great deference, and for reasons stated above, we find the jury verdict on Kennedy's counterclaim for damages was not contrary to the evidence or the law.

### 4. Motion for New Trial

Kennedy argues his motion for new trial should have been sustained, since there was prejudicial error to him as a result of the court's admission of Goedeken's opinion and as a result of the jury's alleged error in the assessment of damages. In light of our discussion on these two issues as set forth above, we conclude the district court did not abuse its discretion by denying Kennedy's motion for new trial on these grounds.

### VI. CONCLUSION

For the reasons stated above, we affirm the judgment of the district court.

Affirmed.